**DLA PIPER LLP (US)**
David S. Sager
51 John F. Kennedy Parkway, Suite 120
Short Hills, New Jersey  07078-2704
T:  973.520.2550
F:  973.520.2551

Attorneys for Plaintiff
Microtel Inns and Suites Franchising, Inc.

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICROTEL INNS AND SUITES FRANCHISING, INC., a Georgia Corporation,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>PRESIDENTIAL HOSPITALITY, LLC, a New Mexico Limited Liability Company, and SAM BLUE, an individual,<br><br>　　　　Defendants. | Civil Action No. 17-<br><br>**COMPLAINT**<br><br>Document Electronically Filed |

　　　　Plaintiff Microtel Inns and Suites Franchising, Inc., by its attorneys, DLA Piper LLP (US), complaining of defendants Presidential Hospitality, LLC and Sam Blue, says:

### PARTIES, JURISIDCTION AND VENUE

　　　　1.　　Plaintiff Microtel Inns and Suites Franchising, Inc. ("MISF") is a corporation organized and existing under the laws of the State of Georgia, with its principal place of business in Parsippany, New Jersey.

　　　　2.　　Defendant Presidential Hospitality, LLC ("Presidential"), on information and belief, is a limited liability company organized and existing under the laws of the State of New

Mexico, with its principal place of business at 5400 West Main Street, Suite 200, Farmington, New Mexico 87410.

3. Defendant Sam Blue ("Blue"), on information and belief, is a member of Presidential and a citizen of the State of New Mexico, having an address at P.O. Box 176, Aztec, New Mexico, 87410

4. Ace Development, Inc., on information and belief, is a corporation organized and existing under the laws of the State of New Mexico and is a member of Presidential, with its principal place of business at 500 West Main Street, Suite 200, Farmington, New Mexico, 87410.

5. On information and belief, Blue and Ace Development, Inc. are the only constituent members of Presidential.

6. This Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1332 inasmuch as the plaintiff and both defendants are citizens of different states and the amount in controversy in this matter, exclusive of interest and costs, exceeds the sum of $75,000.

7. This Court has personal jurisdiction over Presidential by virtue of, among other things, section 13(N) of the March 18, 2011 License Agreement between MISF and Blue (the "License Agreement"), as assigned to and assumed by Presidential pursuant to the May 7, 2013 Amendment, Assignment and Assumption Agreement (the "Assignment"), pursuant to which Blue and, subsequently, Presidential consented to the personal jurisdiction of and venue in the "state or federal court of general jurisdiction closest to [MISF's] then-current principal business address."

8. This Court has personal jurisdiction over Blue by virtue of, among other things, section 13(N) of the License Agreement and the terms of a guaranty (the "Guaranty") executed

by Blue pursuant to which Blue acknowledged that section 13 of the License Agreement applies to the Guaranty.

9. Venue is proper in this District pursuant to section 13(N) of the License Agreement inasmuch as that provision includes an express waiver to venue in this District.

## ALLEGATIONS COMMON TO ALL COUNTS

### The Agreements Between The Parties

10. On or about March 18, 2011, MISF and Blue entered into the License Agreement for the construction and operation of a 105-room Microtel® guest lodging facility to be located at the Northwest Corner of Highway 160 and Roosa Avenue, Durango, Colorado, designated as Site No. 45536-96589-01 (the "Original Hotel Location"). A true copy of the License Agreement is attached as Exhibit A.

11. Pursuant to Section 10(A) of the License Agreement, Blue is obligated to operate a Microtel® guest lodging facility for a twenty-year term.

12. Pursuant to sections 3(A)(11) and 3(D) of the License Agreement, Blue is required to make certain periodic payments to MISF for royalties, marketing/reservation contribution, taxes, interest, reservation system user fees, and other fees (collectively, "Recurring Fees").

13. Pursuant to section 3(D)(6) of the License Agreement, Blue agreed that interest is payable on Recurring Fees at the rate of 1.5% per month (or the maximum rate permitted by law) from the due date until the amount is paid in full.

14. Pursuant to section 6(A) of the License Agreement, Blue is required to prepare and submit monthly reports to MISF disclosing, among other things, the amount of gross room revenue earned in the preceding month for purposes of establishing the amount of royalties and

other Recurring Fees due to MISF.

15. Pursuant to section 6(B) of the License Agreement, Blue agreed to maintain accurate financial information, including books, records, and accounts relating to gross room revenue, and, pursuant to section 6(C) of the License Agreement, Blue agreed to allow MISF to examine, audit, and make copies of the entries in these books, records, and accounts.

16. Pursuant to section 10(C)(1) of the License Agreement, MISF can terminate the License Agreement, with notice to Blue, if Blue fails to pay any Recurring Fees due under the License Agreement within thirty (30) days of MISF's notice.

17. Pursuant to section 13(K) of the License Agreement, Blue agreed to pay all costs and expenses incurred by MISF in enforcing the License Agreement, including but not limited to reasonable attorneys' fees, costs, and expenses incurred by MISF.

**The Assignment of the License Agreement**

18. On or about May 7, 2013, Blue, Presidential, and MISF entered into the Assignment, pursuant to which, among other things, Blue assigned all of his rights, title and interest in the License Agreement to Presidential. A true copy of the Assignment (without exhibits) is attached as Exhibit B.

19. Section 9(D) of the Assignment amended Attachment A of the License Agreement to change the site location from the Original Hotel Location to a parcel of land situated at 623 Phoenix Court, Aztec, New Mexico 87410 (the "Facility"), and section 9(H) of the Assignment designated the new hotel location as Site No. 47176-03078-01

20. In connection with the execution of the Assignment, Blue provided MISF with a Guaranty of Presidential's obligations under the License Agreement, as assigned. A true copy of the Guaranty is attached as Exhibit C.

21. Section 14(C) of the Assignment specified Presidential's eligibility to participate in a New Construction Incentive Program.

22. On or about April 26, 2013, Presidential and Blue co-made a Development Incentive Note (the "Note") in the amount of $105,000, pursuant to which one-fifteenth of the original principal amount of the Note would be given on each anniversary of the Facility's opening date. A true copy of the Note is attached as Exhibit D.

23. The Note provides that, upon acceleration of the Note, the outstanding principal amount shall bear interest at the rate of 1.5% per month (or the maximum rate permitted by law) from its due date until paid.

24. The Note further provides that, in the event the Note is collected by or through an attorney, MISF is entitled to collect reasonable attorney's fees and all costs of collection.

### Defendants' Defaults Under the License Agreement

25. By letter dated March 10, 2015, a true copy of which is attached as Exhibit E, MISF advised Presidential that (a) it was in default of its financial obligations under the License Agreement because it owed Recurring Fees in the amount of $38,456.96, (b) it had ten days to cure this monetary default, and (c) if the default was not cured, the License Agreement would be subject to termination.

26. By letter dated April 17, 2015, a true copy of which is attached as Exhibit F, MISF advised Presidential that it remained in default of its financial obligations under the License Agreement and that it owed Recurring Fees in the amount of $41,101.56.

27. By letter dated October 8, 2015, a true copy of which is attached as Exhibit G, MISF advised Presidential that (a) it was in default of its financial obligations under the License Agreement because it owed Recurring Fees in the amount of $42,821,22 and had failed to fulfill

its obligation under the Payment Plan entered into on or about August 3, 2015, (b) it had ten days to cure this monetary default, and (c) if the default was not cured, the License Agreement would be subject to termination.

28. By letter dated July 12, 2017, a true copy of which is attached as Exhibit H, MISF advised Presidential that (a) it remained in default of its financial obligations under the License Agreement because it owed Recurring Fees in the amount of $169,915.47, (b) it had thirty days to cure this monetary default, and (c) if the default is not cured, the License Agreement will be subject to termination.

29. To date, neither Presidential nor Blue have cured the financial default under the License Agreement.

30. As of August 1, 2017, Presidential owes Recurring Fees to MISF in the amount of $174,037.20.

**FIRST COUNT**

31. MISF repeats and makes a part hereto each and every allegation set forth in paragraphs 1 through 30 of this Complaint.

32. Pursuant to section 6 of the License Agreement, as assigned to Presidential pursuant to the Assignment, Presidential agreed to allow MISF to examine, audit, and make copies of Presidential's financial information, including its books, records, and accounts, relating to the gross room revenue earned at the Facility.

33. The calculation of the monetary amounts sought by MISF in this action is based on gross room revenue information supplied by Presidential and, as to certain months, MISF's estimate as to the gross room revenue earned at the Facility.

34. The accuracy of the information supplied by Presidential and/or estimated by

MISF cannot be confirmed or ascertained without an accounting of the receipts and disbursements, profit and loss statements, and other financial materials, statements and books from Presidential.

**WHEREFORE**, MISF demands judgment ordering that Presidential account to MISF for any and all revenue derived as a result of marketing, promoting or selling lodging services at the Facility.

## SECOND COUNT

35. MISF repeats and makes a part hereto each and every allegation set forth in paragraphs 1 through 34 of this Complaint.

36. Pursuant to sections 3(A)(11) and 3(D) of the License Agreement, Presidential is obligated to pay Recurring Fees to MISF.

37. Despite its obligation to do so, MISF has failed to pay Recurring Fees due and owing under the License Agreement in the amount of $174,037.20 as of August 1, 2017.

38. Presidential's failure to pay Recurring Fees to MISF constitutes a breach of the License Agreement and has damages MISF.

**WHEREFORE**, MISF demands judgment against Presidential for Recurring Fees due and owing under the License Agreement, together with interest, attorneys' fees, and costs of suit, and such other and further relief as this Court shall deem just and proper.

## THIRD COUNT

39. MISF repeats and makes a part hereto each and every allegation set forth in paragraphs 1 through 39 of this Complaint.

40. Despite its obligation to do so, MISF has failed to pay Recurring Fees due and owing under the License Agreement.

41.     Presidential's failure to compensate MISF constitutes unjust enrichment and has damaged MISF.

**WHEREFORE**, MISF demands judgment against Presidential for Recurring Fees due and owing under the License Agreement, together with interest, attorneys' fees, and costs of suit, and such other and further relief as this Court shall deem just and proper.

### FOURTH COUNT

42.     MISF repeats and makes a part hereto each and every allegation set forth in paragraphs 1 through 41 of this Complaint.

43.     Pursuant to the Guaranty, Blue, among other things, guaranteed that all of Presidential's obligations under the License Agreement will be punctually paid and performed and that, upon Presidential's default, Blue will immediately make each payment and perform or cause Presidential to perform each obligation under the License Agreement.

44.     Despite his obligation to do so, Blue has failed to make any payments or to perform, or cause Presidential to perform, its financial obligations under the License Agreement.

**WHEREFORE**, MISF demands judgment against Blue for all amounts that Presidential owes to MISF under the License Agreement, together with interest, attorneys' fees, costs of suit, and such other and further relief as this Court shall deem just and proper.

Dated:  August 1, 2017                    /s/  David S. Sager
                                                      David S. Sager
                                                      DLA PIPER LLP (US)
                                                      51 John F. Kennedy Parkway, Suite 120
                                                      Short Hills, New Jersey  07078-2704

                                                      Attorneys for Plaintiff
                                                      Microtel Inns & Suites Franchising, Inc.

- 9 -

## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

      I certify that, to the best of my knowledge, this matter is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.


Dated:  August 1, 2017                      /s/  David S. Sager
                                                                       David S. Sager